IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 04 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

| | |
|---|---|
| JEFFREY DUPRIEST AND RACHEL GILMORE | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALLSTATE INSURANCE COMPANY, | ) ) |
| Defendant. | ) ) |

Case No: 4:19cv230-swc

This case assigned to District Judge _Wright_
and to Magistrate Judge _Volpe_

## NOTICE OF REMOVAL

Defendant, ALLSTATE INSURANCE COMPANY. ("Allstate" or "Defendant"), removes this case from the Circuit Court of the Sixth Judicial Circuit, Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Western Division, pursuant to (i) 28 U.S.C. §§ 1441 and 1446; and (ii) the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453, and states as follows:

### I.   BACKGROUND

1.      Plaintiffs, Jeffrey DuPriest ("DuPriest") and Rachel Gilmore ("Gilmore") (collectively "Plaintiffs"), filed this civil action against Allstate Insurance Company on or about March 4, 2019, in the Circuit Court of the Sixth Judicial Circuit, in and for Pulaski County, Arkansas, case no. 60CV-19-1235 ("State Court Action" or "Complaint").[1]

2.      Allstate was served with a Summons and the Complaint on March 5, 2019.  Thus, this Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446.

---

[1] Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint, Summons, and Civil Cover Sheet are attached as part of Composite Exhibit 1.

3.      Plaintiffs filed the State Court Action on behalf of themselves and a putative class of allegedly similarly situated individuals named as insureds under Arkansas motor vehicle policies issued by Allstate.

4.      Plaintiffs allege they were each insured under Arkansas motor vehicle insurance policies issued by Allstate.   However, a review of Allstate's records revealed that Plaintiff DuPriest, at all relevant times, was not insured by Defendant Allstate Insurance Company.  At the time of his total loss accident, DuPriest was insured by Allstate Property and Casualty Insurance Company ("AP&C").[2]  Accordingly, AP&C adjusted his total loss claim – not Allstate Insurance Company.

5.      DuPriest alleges that he was involved in a motor vehicle accident on October 6, 2016.  Gilmore similarly alleges that she was involved in a motor vehicle accident on November 16, 2016.  They each allege that a claim was made with Allstate arising from their respective accidents, and that Allstate declared each of their vehicles a total loss under the governing insurance policy.  Plaintiffs assert Allstate undervalued each of their respective total loss vehicles. Notably, DuPriest's claim was made under his policy with AP&C, not with Allstate, and therefore it was AP&C that declared his vehicle a total loss under the governing insurance policy, not Allstate.

6.      Plaintiffs seek declaratory relief as well as compensatory damages, punitive damages, and attorneys' fees, and assert causes of action for: 1) violations of the Arkansas Deceptive Trade Practices Act, 2) Fraud in the Inducement, 3) Bad Faith, and 4) Breach of Contract.

7.      Plaintiffs seek certification of the following proposed class:

---

[2] See Declaration of Joel DeWall ("DeWall Decl.") at ¶ 6, attached as Exhibit 2.

All individuals insured by Allstate under a policy issued or effective in Arkansas who: (a) had a total loss claim with Allstate, (b) that received a settlement calculated using CCC One Report; (c) during the period from February 28, 2014 to the present.[3]

8.    Plaintiffs allege that Allstate's methods to value total loss claims violates its contracts with its insureds and Arkansas law. [4]

9.    Plaintiffs further allege that Allstate utilizes a total loss valuation database and attendant software platform developed and marketed by CCC Information Services, Inc. ("CCC"), which generates a CCC One Report. .[5]

10.    Plaintiffs contend that Allstate's use of CCC One Reports is an improper method for determining the actual cash value of total loss vehicles alleging that it "systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report.  These adjustments serve to immediately lower the cash price paid to covered parties."[6]

## II.    GROUNDS FOR REMOVAL

11.    This case is removable, and this Court has jurisdiction over this action, under CAFA, 28 U.S.C. § 1332, 28 U.S.C. § l441(a) and (b), and 28 U.S.C. § 1453, because (1) this is a putative class action with more than 100 putative class members, (2) there is minimal diversity among the parties; and (3) the Complaint places into controversy an amount that exceeds $5,000,000 in the aggregate.

12.    CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants.  To that end, CAFA provides that class actions

---

[3] Complaint at ¶ 59.
[4] Complaint at ¶ 2.
[5] Complaint at ¶ 11.
[6] Complaint at ¶ 15.

LEGAL\40608352\2

filed in state court are removable to federal court if they meet certain basic prerequisites. Specifically, CAFA expanded federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction where the putative class contains at least 100 class members; any member of the putative class is a citizen of a State different from that of any defendant; and the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

13.     When subject matter jurisdiction under CAFA is invoked, the court must give strong preference to the resolution of interstate class actions in federal court. *Westerfield v Independent Processing, LLC,* 621 F.3d 819, 822 (8th Cir. 2010). Moreover, even if uncertain about whether all matters in controversy in a purported class action do not in the aggregate exceed the sum of $5,000,000, the federal court should err in favor of exercising jurisdiction over the case. *Alexander v. Pipeline Productions, Inc.,* 2018 WL 3045179 (E.D. Ark. 2018).

14.     This suit satisfies all of the requirements under CAFA for federal jurisdiction because (1) the putative class exceeds 100 members; (2) members of the proposed class have a different citizenship from Allstate; and (3) the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

### A. *The Putative Classes Exceed 100 Members*

15.     CAFA requires that the class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). That requirement is met here. While Plaintiffs do not quantify the number of putative class members in the Complaint, a review of Allstate's records indicate that there were approximately 2,443 Arkansas insureds whose total loss vehicles were adjusted with a CCC One Report during the five year class period alleged by Plaintiffs under an Allstate policy.[7] Additionally, a review of

---

[7] See Declaration of Kevin Bolkema ("Bolkema Decl.") at ¶ 5, attached as Exhibit 3.

AP&C's records indicates that there were approximately 9,795 Arkansas insureds whose total loss vehicles were adjusted with a CCC One Report during the five year class period alleged by Plaintiffs under an AP&C policy.[8]

### B. There Is Minimal Diversity Among the Parties

16.     The second CAFA requirement is minimal diversity, i.e., at least one putative class member must be a citizen of a different state than any one defendant. 28 U.S.C. § 1332(d)(2).

17.     Plaintiffs allege that each is a citizen of the State of Arkansas.[9]

18.     Plaintiffs seeks to represent a class consisting of individuals whose motor vehicles were insured under a policy of insurance issued in Arkansas.

19.     Plaintiffs allege that Allstate is incorporated in the State of Delaware and has its principal place of business in Northbrook, Illinois.

20.     In an attempt to avoid complete diversity Plaintiffs also erroneously allege that Allstate is "also a citizen of each state of which Plaintiffs and all putative class members are Citizens", namely Arkansas, relying on 28 U.S.C. § 1332(c)(1).[10]  Plaintiffs contend that Section 1332(c)(1) deems a liability insurer to have the same citizenship as its insured if the insurer is sued in a direct action and the insured is not also named as a defendant in order to deem Allstate to be a citizen of Arkansas and destroy diversity.

21.     Plaintiffs are incorrect and their reliance on 28 U.S.C. § 1332(c)(1) is wholly misplaced.  The "direct action" provision is inapplicable as it is not intended to encompass all actions against insurers, but only situations in which an injured party is permitted to sue a tortfeasor's insurer directly and without joinder of the tortfeasor.  *Moore v. State Farm Mutual*

---

[8] Ex. 2 – DeWall Decl. at ¶ 5.
[9] Complaint at ¶¶ 3-4.
[10] Complaint at ¶ 5.

*Automobile Insurance*, 2010 WL 11565378, at \*2 (W.D. Ark. 2010); *see Inman v. MFA Mutual Insurance Co.*, 264 F.Supp. 727 (D.C. Ark. 1967).

22.     Allstate is an Illinois corporation with its principal place of business located in Northbrook, Illinois.[11]  AP&C is an Illinois corporation with its principal place of business located in Northbrook, Illinois.[12]

23.     Thus, there is minimal diversity, as the Plaintiffs and putative class, are citizens of Arkansas, and Allstate and AP&C are(and were at the time of the filing of the Complaint and all times intervening) citizens of Illinois.  This prerequisite of CAFA is met. 28 U.S.C.§ 1332(d)(2).

### C.  *The CAFA Amount in Controversy Is at Least $5,000,000*

24.     CAFA requires that the amount in controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

25.     As the United States Supreme Court has held, a defendant's notice of removal under CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). The removing party does not have to prove by a preponderance that the amount is more than $5 million, but rather that a fact finder might legally conclude that it is.  *Hartis v. Chicago Title Insurance Co.*, 694 F.3d 935, 781 (8th Cir. 2012). "Importantly, the removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof."  *Id. at* 944-45 (8th Cir. 2012)(quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). "Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.  Once the removing party has met its burden, a plaintiff

---

[11] Ex. 3 – Bolkema Decl. at ¶3.
[12] Ex. 2 – DeWall Decl. at ¶3.

6

seeking remand must establish to a legal certainty that the amount in controversy is less than the required statutory amount. *Bell v. Hershey Co*, 557 F.3d 953, 956 (8th Cir. 2009).

26.     In addition to compensatory or actual damages, both punitive damages and attorneys' fees may be used in determining the amount in controversy. *See OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 348 (8th Cir.); *Crawford v. Hoffman-LaRoche Ltd.,* 267 F.3d 760, 766 (8th Cir. 2007).

27.     Based on Plaintiffs' allegations and legal theories as pleaded on the face of their Complaint, the $5,000,000 CAFA amount in controversy requirement is clearly satisfied by an aggregate of the compensatory damages stemming from each of Plaintiffs' claims, and adding the possible punitive damages and attorney fees.

     *a.  Actual or Compensatory Damages of Plaintiffs and the Putative Class*

28.     Plaintiffs allege that Allstate's use of CCC One Reports in determining the actual cash value of putative class members' total loss vehicles is improper because it "systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report.  These adjustments serve to immediately lower the cash price paid to covered parties."[13]

29.     Plaintiffs contend that under Arkansas law, Allstate is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area.[14] Ark. Ins. R. 43, § 10(a)(2)-(3).  Plaintiffs further contend that CCC is not a qualified dealer or appraisal service located in Pulaski County,

---

[13] Complaint at ¶ 15.
[14] Complaint at ¶ 2.

LEGAL\40608352\2

Arkansas.[15]  Plaintiffs assert that Allstate's use of CCC One Reports violates its contracts with its insureds and Arkansas law.  Plaintiffs therefore seek a declaration that Allstate's use of the CCC One Report to adjust first party insurance claims violates the policies and Arkansas law. [16] Additionally, in each of Plaintiffs' four causes of action, Plaintiffs' assert that the individual Plaintiffs and putative class members are entitled to damages "in an amount equal to the difference between the amount paid to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law."[17]

30.     Plaintiffs assert that "Allstate presented the CCC One Report to Plaintiffs as representing the 'actual cash value' of their vehicles, and, based on the CCC One Report, Allstate paid to settle the total loss claims."[18]  Plaintiffs contend that both vehicles "were worth more than shown on the CCC One Report" and that the vehicles used for comparison in the CCC One Report were not 'in the local market'".[19]

31.     Per Plaintiffs' allegations, "Allstate paid 'base values' of $3,657 to DuPriest. and $5,238 to Gilmore".[20]  Again, a review of AP&C's records indicates that it was AP&C that made the payment to DuPriest, not Allstate.[21]  Plaintiffs contend that a vehicle of similar make, model, mileage and condition to DuPriest's vehicle within the local market was listed for $4,499.[22] Similarly, Plaintiffs contend that a vehicle of similar, model, mileage and condition to Gilmore's vehicle within the local market was listed for $5,495.[23]

---

[15] Complaint at ¶ 18.
[16] Complaint at ¶ 2.
[17] Complaint at ¶¶ 36, 44, 49 and 56.
[18] Complaint at ¶ 12.
[19] Complaint at ¶ 13.
[20] Complaint at ¶¶ 13-14.
[21] Ex. 2 – DeWall Decl. at ¶6.
[22] Complaint at ¶ 13.
[23] Complaint at ¶ 14.

LEGAL\40608352\2

32.     Taking the allegations as pleaded, disregarding any defenses Allstate and/or AP&C may have to the claims of Plaintiffs and putative class members, and assuming arguendo that Plaintiffs can establish their case, Plaintiffs would be entitled to actual or compensatory damages "in an amount equal to the difference between the amount paid to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law."[24]   Accordingly, DuPriest's individual damages would be $842, the difference between $4,499 and $3,657 Similarly, Gilmore's individual damages would be $257, the difference between $5,495 and $5,238.

33.     During the five year class period of February 28, 2014 to March 4, 2019, Allstate settled approximately 2,443 total loss claims in Arkansas and the approximate aggregate valuation of those claims was $19,207,277.54.[25]  . During that same five year class period, AP&C settled approximately 9,795 total loss claims in Arkansas and the approximate aggregate valuation of those claims was $81,295,518.74.[26]  Allstate and AP&C deny that Plaintiffs, or any potential putative class member, are entitled to recover any amount from it, and Allstate and AP&C believe that the relief sought in the State Court Action is too individualized and otherwise not proper for class action treatment. However, Allstate and AP&C provide the above calculation of the aggregate amount at issue in this case solely for the purpose of evaluating the amount in controversy under CAFA.[27]

34.     Based on Plaintiffs' allegations and assuming arguendo that Plaintiffs could establish similar damages for the other putative class with respect to Allstate and AP&C policies,

---

[24] Complaint at ¶¶  36, 44, 49 and 56.
[25] Ex. 3 – Bolkema Decl. at ¶5.
[26] Ex. 2 – DeWall Decl. at ¶5.
[27] *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

a fact-finder could potentially conclude that the putative class members are entitled to actual or compensatory damages ranging between $627,851 (2,443 x $257) for the Allstate policies and $8,247,390 (9,795 x 842) for the AP&C policies. The median of the potential damages of the purported putative class would be $4,437,621.

### b. *Punitive Damages*

35.     The Complaint also alleges that Plaintiffs and the putative class members are entitled to an award of punitive damages as to the first three counts of their Complaint .[28]

36.     Punitive damages may be used in determining the amount in controversy. *One Point Solutions, LLC,* 486 F.3d at 348. In calculating possible punitive damages for the purpose of satisfying the CAFA amount-in-controversy threshold, courts routinely apply multipliers of four to six times the total amount of actual or compensatory damages in determining what punitive damages award might be legally permissible. *See, e.g., Goodner v. Clayton Holmes, Inc.,* 2014 WL 4722748, at *3-4 (W.D. Ark. 2014); *Alexander v. Pipeline Productions, Inc.,* 2018 WL 3045179, at *3 (E.D. Ark. 2018).

37.     In this case, in light of the potential range of compensatory damages that the putative class members may be entitled, it is reasonable for this Court to find that an award of punitive damages six times the actual damages would be legally possible.[29] *Id.* Accordingly, the possible punitive damages for the putative class could be $3,767,106 for the Allstate policies and $49,484,340 for the AP&C policies. Even if the Court were to use a more conservative multiplier of four times the actual damages, the potential putative damages could be between $2,511,404 and $32,989,560 for the Allstate and AP&C policies, respectively. The median range of the possible

---

[28] Complaint at ¶¶  37, 45, 50.
[29] Again, Allstate and AP&C dispute that plaintiffs are entitled to any damages.

punitive damages for the putative class, could be on the low end (using a multiplier of four) $17,750,482 and on the higher end (using a multiplier of six) $26,625,723.

   c.   *Attorneys' Fees*

38.     Plaintiffs also seek to recover attorneys' fees under the ADTPA.[30]  Ark. Code Ann. § § 4-88-113(f) and 4-88-204.  "Because statutory attorneys' fees are available to Plaintiffs the fees may be included in calculating the amount in controversy." *Goodner,* 2014 WL 4722748, at *4.  While courts must analyze a number of factors when considering an award of reasonable attorneys' fees, in this context, the removing party need only show what attorneys' fees might legally be possible. *Id.* at *5.  "Other courts considering attorneys' fees in the amount-in-controversy context have held that a fee of 40% is a reasonable estimate at this stage of the pleadings." *Id.; see also Alexander v,* 2018 WL 3045179, at *3.  Therefore, Plaintiffs and the putative class members could be awarded attorneys' fees between $251,140 and $3,298,956. The median of the potential attorneys' fees being $1,775,048.

   d.  *Median Amount in Controversy*

39.     By adding punitive damages and attorney fees to the actual damages, the aggregate value of the potential recovery could be between $3,390,395 and $4,646,097 for the Allstate policies, and between $44,535,906 and $61,030,686 for the AP&C policies, depending on the amount of actual damages and the multiplier used by the court for punitive damages.  The median of this range is $28,400,772.

---

[30] Complaint at ¶¶ 38, 59.

11

| Alleged Amounts of Damages & Fees | | Allstate Insurance Co. Gilmore $257 | Allstate Property & Casualty Insurance Co. DuPriest $842 | Median |
|---|---|---|---|---|
| Actual Damages | | $627,851 | $8,247,390 | $4,437,621 |
| Punitive Damages | Multiplier of 6 | $3,767,106 | $49,484,340 | $26,625,723 |
| | Multiplier of 4 | $2,511,404 | $32,989,560 | $17,750,482 |
| Attorneys' Fees | | $251,140 | $3,298,956 | $1,775,048 |
| | | | | |
| Total Ranges of Amount-in-Controversy | Multiplier of 6 | $4,646,097 | $61,030,686 | $32,838,392 |
| | Multiplier of 4 | $3,390,395 | $44,535,906 | $23,963,151 |
| **Median Total Amount in Controversy = $28,400,772** | | | | |

40.    Accordingly, it is more than plausible that the total amount in controversy is greater than $28,400,772, and therefore will likely exceed the jurisdictional threshold.

41.    Based on the above, it is evident that the $5,000,000 CAFA amount in controversy requirement is satisfied.

42.    Accordingly, because the CAFA prerequisites are met, this case is properly removable under CAFA.

43.    Written notice of this Notice of Removal will be given to Plaintiffs as required by law. A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will promptly be filed with the Circuit Court Clerk for the Circuit Court of Pulaski County.

LEGAL\40608352\2

44.     The allegations of this Notice of Removal are true and correct and this cause is within the jurisdiction of the United States District Court for the Eastern District of Arkansas, Western Division, and this cause is removable to the United States District Court for the Eastern District of Arkansas, Western Division.

WHEREFORE, Allstate Insurance Company prays that this Court will consider this Notice of Removal as provided by law governing the removal of cases to this Court; that this Court will make the proper orders to achieve the removal of the State Court Action to this Court; and that this Court will make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the State Court Action.

Respectfully submitted,

By: _____

Kevin A. Crass, #84029
Friday, Eldredge & Clark, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3493
crass@fridayfirm.com

*Attorney for Defendant, Allstate Insurance Company*

13

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 4th day of April, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

_____
Kevin A. Crass

## SERVICE LIST

*Attorneys for Plaintiff*

John Holleman, ABN 91056
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
jholleman@johnholleman.net

Lloyd "Tre" Kitchens, ABN 99075
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR 72227
tkitchens@bradhendricks.com

 CT Corporation

**Service of Process Transmittal**
03/05/2019
CT Log Number 535039118

**TO:**     Kim Turner
Allstate Insurance Company - Nashville MCO
555 Marriott Dr Ste 850
Nashville, TN 37214-5026

**RE:**     **Process Served in Arkansas**

**FOR:**    Allstate Insurance Company (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jeffrey Dupriest and Rachel Gilmore, Pltfs. vs. Allstate Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Proof of Service, Notice, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Pulaski County Circuit Court, AR<br>Case # 60CV191235 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Little Rock, AR |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/05/2019 at 09:45 |
| **JURISDICTION SERVED :** | Arkansas |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons on you (not counting the day you received it) |
| **ATTORNEY(S) / SENDER(S):** | John T Holleman<br>Holleman & Associates, P.A.<br>1008 West 2nd Street<br>Little Rock, AR 72201<br>501-975-5040 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/06/2019, Expected Purge Date: 03/11/2019 |
| | Image SOP |
| | Email Notification,  Kim Turner  chzwv@allstate.com |
| | Email Notification,  Susan Ellis  selli@allstate.com |
| | Email Notification,  Kelly Merryman  Kelly.merryman@allstate.com |
| **SIGNED:** | CT Corporation System |
| **ADDRESS:** | 124 W Capitol Ave Ste 1900<br>Little Rock, AR 72201-3717 |
| **TELEPHONE:** | 214-932-3601 |

Page 1 of  1 / SK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. ALICE S. GRAY - 12TH DIVISION 6TH CIRCUIT

JEFFREY DUPRIEST, ET AL V ALLSTATE INSURANCE CO.

60CV-19-1235

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

ALLSTATE INSURANCE COMPANY
c/o The Corporation Company, Registered Agent
124 W Capitol Ave., #1900
Little Rock, AR  72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

Chauncey E. Durham, DC

Date: 03/04/2019

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

**Circuit Clerk**
**Date: 03/04/2019**

No. 60CV-19-1235 This summons is for ALLSTATE INSURANCE COMPANY (name of Defendant).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the individual at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

*see other*

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains and office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____

[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☒ Other [specify]:
Plaintiffs' First Set of Interrogatories and Requests for Production of Documents to Defendant Allstate Insurance Company
☐ I was unable to execute service because: _____
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____ .

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-04 09:16:51
60CV-19-1235
C06D12 : 20 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**JEFFREY DuPRIEST and**                    **PLAINTIFFS**
**RACHEL GILMORE**

    **v.**                **CASE NO. _____**

**ALLSTATE INSURANCE COMPANY**           **DEFENDANT**

---

## CLASS ACTION COMPLAINT

---

### I. INTRODUCTION

1.    Plaintiffs Jeffrey DuPriest and Rachel Gilmore were each involved in separate vehicular accidents that resulted in total losses. At the time of the accidents, DuPriest was driving a 2003 Honda VTX1800C Cruiser when he had a wreck on October 6, 2016. Gilmore was driving a 2005 Toyota Corolla S when she had an accident on November 16, 2016. Both Plaintiffs insured their vehicles with Allstate Insurance Co., who declared the vehicle a total loss. After the vehicles were declared total losses, Allstate made cash settlement offers of $3,657 and $5,238, respectively, based on a CCC One Market Valuation Report. Allstate uses the CCC One Report in adjusting its

total loss claims. The CCC One Report systematically undervalues the insureds' vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving Allstate millions of dollars each year at the expense of its insured motorists.

2. Allstate's use of CCC One Reports to value total loss claims violates its contracts with its insureds and Arkansas law. Allstate is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law Allstate uses the CCC One Report to cheat their policyholders and to increase its own profits. Plaintiffs bring this suit on behalf of themselves and others similarly situated to recover the difference between the actual cash value of their vehicles and what they were paid, punitive damages, costs, and attorneys' fees. Plaintiffs also ask the Court to declare that the use of the CCC One Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. PARTIES, JURISDICTION, AND VENUE

3.　　Plaintiff Jeffrey DuPriest is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this Complaint, he had a motor vehicle insurance policy with Allstate and had a total-loss claim.

4.　　Plaintiff Rachel Gilmore is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with Allstate and had a total-loss claim.

5.　　Defendant Allstate is incorporated in the State of Delaware and has its principal place of business in Northbrook, Illinois. It is licensed to do business in the State of Arkansas. Further, because this is a direct action against Allstate, it is also a citizen of each state of which Plaintiffs and all putative class members are Citizens. 28 U.S.C. § 1332(c)(1). Thus, Allstate is also citizen of Arkansas because the Plaintiffs and putative class members are citizens of Arkansas.

6.　　This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

7.　　Venue is proper in this Court because Plaintiffs resided in Pulaski County at the time of the events giving rise to the cause of action , and the incidents occurred in Pulaski County . Ark. Code Ann. § 16-60-101.

## III. FACTUAL ALLEGATIONS

8.    In October of 2016, DuPriest was driving a 2003 Honda VTX1800 Cruiser motorcycle and was involved in a motor vehicle accident which resulted in substantial damage to his vehicle. DuPriest had an insurance policy with Allstate and submitted a claim to his insurer on October 11, 2016 and received an estimate on or about October 11, 2016.

9.    In November of 2016, Gilmore was driving a 2005 Toyota Corolla S and was involved in a motor vehicle accident which resulted in substantial damage to her vehicle. Gilmore had an insurance policy with Allstate and submitted a claim to her insurer on November 21, 2016.

10.    The Plaintiffs' insurance policies with Allstate each contained a clause providing for the adjustment and settlement of total loss claims based on "actual cash value or replacement with another of like kind or quality." Upon information and belief, this is Allstate's standard automobile insurance policy issued to insureds in the state of Arkansas.

11.    Allstate used reports from a third-party corporation known as a CCC One Report to adjust Plaintiffs' claims. CCC One Information Services, Inc. sells automobile valuation information primarily to insurance companies for settling total loss vehicle claims. The CCC One Report is sold

almost solely to insurance companies, and it is marketed as reducing the costs of total value settlements. Upon information and belief, Allstate uses the CCC One Report to calculate its offers of all total loss claims.

12.     Allstate presented the CCC One report to Plaintiffs as representing the "actual cash value" of their vehicles, and, based on the CCC One Report, Allstate paid to settle the total loss claims. *See* CCC One Reports, attached as Exhibits 1 and 2. Allstate paid "base values" of \$3,657 to DuPriest and \$5,238 to Gilmore.

13.     Plaintiffs' vehicles, however, were worth more than shown on the CCC One Report. With respect to DuPriest's motorcycle, NADA Guides, which provides pricing information for motorcycles lists the average retail price as \$3,925, with a "low retail" price of \$2,985. See NADA Guide, attached as Exhibit 3. The vehicles that were used for comparison in the CCC One Report were not "in the local market," as two were over 250 miles away in Oklahoma and Texas. A search for identical vehicles for sale in the immediate area found that a vehicle of similar make, model, mileage, and condition was listed in Jonesboro for \$4,499. *See* Used Honda for sale in Jonesboro, obtained on February 26, 2019, attached as Exhibit 4. He ultimately received \$3,657 for his vehicle.

14. A search for vehicles similar to Ms. Gilmore's near her home showed three available. Two of these had over 100,000 more miles than hers, yet sold for $2,800 and $3,500. A car of the same year with mileage comparable to hers was available for $5,495. See Vehicles for Sale, attached as Exhibit 5. She ultimately received $5,238 for her trade-in.

15. The CCC One Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report. These adjustments serve to immediately lower the cash price paid to covered parties.

16. Allstate knows that the CCC One Report undervalues vehicles. Despite knowing that the CCC One Report undervalues vehicles, Allstate continues to use it to determine the amount to pay claimants.

17. Arkansas law requires that Allstate, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43,

§ 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

18.    CCC One Information Services, Inc. is not a qualified dealer or appraisal service located in Pulaski County, Arkansas.

19.    Allstate did not provide any documentation to DuPriest or Gilmore about why it needed to deviate from one of the two approved methods of determining actual cash value for their vehicles. Moreover, the CCC One Report specifically disclaims that its adjustments are measurable, discernable, or appropriate, proclaiming that the adjustments **"are displayed for illustrative purposes only."** *See* **Gilmore CCC One Report,** Exhibit 2, p. 3. Allstate does not explain these deductions to the customer, much less show that they are reasonable and appropriate.

20.    There was nothing unique about Plaintiffs' vehicles that would justify deviating from the methods approved under Arkansas law. Allstate

was required to adjust DuPriest's and Gilmore's vehicles using one of the two approved methods.

21.     Allstate knows or should know that using the CCC One Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, Allstate uses the practices because it saves Allstate millions of dollars. Allstate can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the CCC One Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

22.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

23.     Plaintiffs bring this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

24.     Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown, but may be easily determined from records maintained by Allstate.

25.     There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a.     Whether Allstate has a practice of using the CCC One Report to determine actual cash value;

b.     Whether Regulation § 43, § 10 is incorporated into the terms of Allstate's automobile insurance policies;

c.     Whether Allstate's practices violated Regulation 43, § 10; and

d.     Whether CCC One Information Services, Inc. is a qualified dealer or appraiser in the local market area.

26.     Plaintiffs' claims are typical of the putative class. Like all other putative class members, Plaintiffs had total loss automobile claims that were settled and adjusted using the CCC One Report.

27.     Plaintiffs will fairly and adequately protect the interest of the putative class. They have no conflicts with putative class members and have suffered the same injury as members of the putative class.

28.    Plaintiffs' counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

29.    The questions of law and fact common to Plaintiffs and members of the putative class predominate over any question affecting only individual class members. These common questions concerning Allstate's wrongdoing must be resolved for all class members.

30.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Allstate engages in a common business practice of using the CCC One Report to settle total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require Allstate to litigate its business practice on a class-wide basis. Moreover, Class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claims standing along, the aggregate value of the practice is substantial.

31.    Plaintiffs' class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the Act – is an unconstitutional

intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. CAUSES OF ACTION

### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

32.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

33.     Arkansas law requires that an insurer settle total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

34. Allstate settles total loss automobile claims by relying on the CCC One Report, CCC One Information Services, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

35. Allstate engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the CCC One Report to settle Plaintiffs' total loss claims. Allstate also used the same unconscionable, false, or deceptive act or practice in using the CCC One Report to settle all of its total loss claims in Arkansas.

36. Defendant's conduct proximately caused damage to Plaintiffs and putative class members. Plaintiffs and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

37. Allstate knew or ought to have known that their conduct would result in injury to Plaintiffs and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiffs and putative class members are entitled to punitive damages.

38.    Plaintiffs and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claims.

## COUNT II: FRAUD IN THE INDUCEMENT

39.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

40.    Allstate falsely represented that the amount in the CCC One Report represented the actual cash value of Plaintiffs' vehicles. Allstate made the same false representation to every other putative class member.

41.    Allstate knew that its representation was false. First, Allstate knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the CCC One Report was not a permissible method. Further, Allstate knew that the CCC One Report systematically generated valuations that were lower than the "actual cash value" that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

42.    Allstate intended to induce and coerce Plaintiffs and putative class members into settling their total loss claims for less than they would

have if Allstate had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

43.    Plaintiffs and putative class members justifiably relied on Allstate's representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

44.    Allstate's conduct proximately caused damages. Plaintiffs and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

45.    Defendant knew or ought to have known that its conduct would result in injury to Plaintiffs and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiffs and putative class members are entitled to punitive damages.

## COUNT III: BAD FAITH

46.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

47.     Allstate acted in bad faith to avoid liability under its policy issued to Plaintiffs. Allstate knew that its method of settling total loss claims violated Arkansas law and would result in a lower payment to Plaintiffs than if Allstate would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, Allstate fraudulently presented the CCC One Report to Plaintiffs as representing the "actual cash value" of their vehicles.

48.     Allstate did more than merely refuse to pay a claim. Allstate intentionally violated Arkansas law to save itself money at the expense of its insured. Allstate's conduct was dishonest and oppressive, and was carried out with a state of mind characterized by contempt for its insureds.

49.     Allstate's conduct proximately caused damages. Plaintiffs and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

50.    Defendants knew or ought to have known that their conduct would result in injury to Plaintiffs and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiffs and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

51.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

52.    Allstate entered separately into contracts with Plaintiffs DuPriest and Gilmore. Among other things, these policies provide for the adjustment and settlement of total losses based on "actual cash value or replacement with another of like kind or quality."

53.    Arkansas law requires that Allstate either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from this method, it must provide

documentation for the deviation, including giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

54.     Plaintiffs and putative class members did what the contract required of them.

55.     Allstate breached the contracts by using the CCC One Report instead of using the methods required by Arkansas law.

56.     As a result of Allstate's breach of contract, Plaintiffs and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. Jury Demand & Prayer for Relief

57.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

58.    Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs…." Plaintiffs demand a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

59.    WHEREFORE, Plaintiffs respectfully requests this Court:

a.    Certify a class defined as:

> All individuals insured by Allstate under a policy issued or effective in Arkansas who: (a) had a total loss claim with Allstate; (b) that received a settlement calculated using CCC One Report; (c) during the period from February 28, 2014 to the present.

b.    Appoint Jeffrey DuPriest and Rachel Gilmore as class representatives;

c.    Appoint Holleman & Associates, P.A. as class counsel;

d.      Declare that Allstate's practice of using the CCC One Report to settle total loss claims violates Arkansas law;

e.      Enjoin Allstate from using the CCC One Report to settle future total loss claims in the state of Arkansas;

f.      Award them compensatory damages in an amount equal to the difference between the actual cash value of their vehicles and the amount Allstate paid;

g.      Award them punitive damages in an amount sufficient to punish Allstate for its wrongdoing and to deter others from engaging in similar wrongdoing;

h.      Award Plaintiffs all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.      Grant Plaintiffs all such further relief deemed just and appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
CooD12 : 11 Pages

# CCC ONE MARKET VALUATION REPORT

*Prepared for ALLSTATE*

## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Jeffrey Dupriest |
| | 6217 Blackhawk Dr, |
| | North Little Rock, AR 72116 |
| Loss Unit | Cruiser 2003 Honda VTX1800C3 |
| | 1795 |
| Loss Unit Type | MOTORCYCLES |
| Loss Incident Date | 10/06/2016 |
| Claim Reported | 10/11/2016 |

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 82434098 -2 |
| Claim Reference | 000431338946D01 |
| Adjuster | Mobarak, Geoffrey |
| Odometer | 34,400 |
| Last Updated | 10/11/2016 01:13 PM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Value** | **$ 3,657.00** |
| **Adjusted Value** | **$ 3,657.00** |
| DMV | + $ 13.75 |
| Deductible | - $ 250.00 |
| **Total** | **$ 3,420.75** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss unit, based on information provided to CCC by ALLSTATE.

**BASE VALUE**
This is derived from comparable unit(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

**Inside the Report**

Valuation Methodology......................2
Loss Unit Information........................3
Comparable Units.............................4
Valuation Notes...............................6
Supplemental Information....................7

**EXHIBIT**

**1**

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE. MARKET VALUATION REPORT**

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

ALLSTATE has provided CCC with the zip code where the loss unit is garaged, loss unit VIN, mileage/hours, options and additional equipment, as well as loss unit condition, which is used to assist in determining the value of the loss unit.



### DATABASE REVIEW

CCC maintains an extensive database of units that currently are or recently were available for sale in the U.S. This database includes units advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable units are selected. On current year units, new units for sale at the time of the valuation may have been used. The zip code where the loss unit is garaged determines the starting point for the search. Comparable units are similar to the loss unit based on relevant factors. If a sufficient number of comparable units cannot be located, CCC may also obtain dealer quotations for a unit with attributes as reported by the insurer.



### CALCULATE VALUATION

Adjustments to the price of the selected comparable units are made to reflect differences in attributes, including mileage/hours, options, additional equipment, refurbishments, after factory equipment, and condition. Dollar adjustments are based upon market research. Finally, the Base Value is the straight average of the adjusted values of the comparable units. Due to the unique nature of the loss units valued in the Commercial and Recreational Vehicle division, a valuation specialist handles each request individually.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Jeffrey Dupriest
Claim: 000431338946D01

#  LOSS UNIT INFORMATION

## LOSS UNIT DETAILS

| | |
|---|---|
| Location | North Little Rock, AR  72116 |
| VIN | 1HFSC460X3A110962 |
| Year | 2003 |
| Make | Honda |
| Model | VTX1800C3 |
| Engine Description | 1795 |
| Model # | 1HFSC4603A |

## LOSS UNIT CONDITION

| | Condition |
|---|---|
| Overall Rating | Average |

## LOSS UNIT EQUIPMENT

| | | |
|---|---|---|
| Wheels | Performance Tires | ✔ |

Motorcycles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the motorcycle.

Please review the information in the Loss Unit Information Section to confirm the reported mileage and condition and to verify that the information accurately reflects the options, additional equipment, refurbishments or other aspects of the loss unit that may impact the value.

ALLSTATE uses condition inspection guidelines to determine the condition of the loss unit prior to the loss. The guidelines describe physical characteristics for the loss unit, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss unit's condition.

To the left is the equipment of the loss unit that ALLSTATE provided to CCC.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 CCC≋ONE. MARKET VALUATION REPORT | Owner: Jeffrey Dupriest
Claim: 000431338946D01

# 🔍 COMPARABLE UNITS

| | Loss Unit | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Price | | $4,290 | $3,000 | $4,399 |
| Year/Make/Model | 2003 Honda VTX1800C3 | 2003 Honda VTX1800C3 | 2003 Honda VTX1800C3 | 2003 Honda VTX1800S |
| Odometer | 34,400 | 17,254 | 70,151 | 30,000 |
| **Configuration** | | | | |
| Engine | 1795 | 1795CC | 1795CC | 1795 |
| **Options** | | | | |
| Luggage/Roof Rack | ✗ | ✗ | ✗ | ✔ |
| Engine Guard | ✗ | ✗ | ✗ | ✔ |
| Stereo | ✗ | ✗ | ✗ | ✔ |
| Back Rest | ✗ | ✔ | ✔ | ✔ |
| Performance Tires | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✗ | ✗ | ✗ | ✔ |
| Plexiglass Fairing | ✗ | ✗ | ✔ | ✗ |
| Fairing | ✗ | ✗ | ✗ | ✔ |
| Forward Controls | ✗ | ✗ | ✗ | ✔ |
| AM Radio | ✗ | ✗ | ✗ | ✔ |
| Floor Boards/Highway Boards | ✗ | ✗ | ✗ | ✔ |
| Soft Saddle Bags | ✗ | ✗ | ✔ | ✔ |
| **Condition** | Average | Average | Average | Average |
| **Adjustments:** | | | | |
| Make/Model/Trim | | | | - $ 810 |
| **Options** | | | | |
| Luggage/Roof Rack | | | | - $ 33 |
| Engine Guard | | | | - $ 33 |
| Stereo | | | | - $ 63 |
| Back Rest | | - $ 36 | - $ 36 | - $ 36 |
| Plexiglass Fairing | | | - $ 36 | |
| Forward Controls | | | | - $ 58 |
| Floor Boards/Highway Boards | | | | - $ 42 |
| Soft Saddle Bags | | | - $ 50 | - $ 50 |
| Odometer | | - $ 395 | $ 626 | - $ 83 |
| **Adjusted Comparable Value** | | **$3,859** | **$3,504** | **$3,191** |

Comp 1      Updated Date: 05/03/2016
2003 Honda VTX1800C3
VIN UNKNOWN
Dealership SUNRISE HONDA
MOTORSPORTS
Telephone (866) 476-9995
Source Dealer Ad
Location Searcy, AR

Comp 2      Updated Date: 06/03/2016
2003 Honda VTX1800C3
VIN UNKNOWN
Contact JARRETT DORSEY
Telephone (903) 812-0736
Source Private Seller
Location Kilgore, TX

Comp 3      Updated Date: 09/20/2016
2003 Honda VTX1800S
VIN 1HFSC493X3A102737
Dealership MOTOR SPORTS OF
MUSK
Telephone (866) 542-3540
Source Dealer Ad
Stock # 102737
Location Muskogee, OK

Comparables used in the determination
of the Base Value are not intended to be
replacement units but are reflective of
the market value, and may no longer be
available for sale.

Price is the amount that the dealership
will accept to sell the unit, though a
lower price may be obtainable through
negotiation.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC◼ONE  MARKET VALUATION REPORT

Owner: Jeffrey Dupriest
Claim: 000431338946D01

 COMPARABLE UNITS

| | Loss Unit | Comp 4 | Comp 5 |
|---|---|---|---|
| Price | | $3,995 | $4,300 |
| Year/Make/Model | 2003 Honda VTX1800C3 | 2003 Honda VTX1800C3 | 2003 Honda VTX1800C3 |
| Odometer | 34,400 | 40,000 | 19,000 |
| **Configuration** | | | |
| Engine | 1795 | 1795CC | 1795CC |
| **Options** | | | |
| Light Bar - Custom Lights | ✗ | ✗ | ✔ |
| Custom Seating | ✗ | ✗ | ✔ |
| Forward Controls | ✗ | ✔ | ✗ |
| Luggage/Roof Rack | ✗ | ✔ | ✗ |
| Back Rest | ✗ | ✔ | ✔ |
| Performance Tires | ✔ | ✔ | ✔ |
| Plexiglass Fairing | ✗ | ✔ | ✔ |
| Soft Saddle Bags | ✗ | ✔ | ✗ |
| **Condition** | Average | Average | Average |
| **Adjustments:** | | | |
| **Options** | | | |
| Custom Seating | | | - $ 48 |
| Forward Controls | | - $ 58 | |
| Luggage/Roof Rack | | - $ 33 | |
| Back Rest | | - $ 36 | - $ 36 |
| Plexiglass Fairing | | - $ 36 | - $ 36 |
| Soft Saddle Bags | | - $ 50 | |
| Odometer | | $ 98 | - $ 331 |
| **Adjusted Comparable Value** | | **$3,880** | **$3,849** |

Comp 4    Updated Date: 05/03/2016
2003 Honda VTX1800C3
VIN UNKNOWN
Dealership HONDA OF NORTH LITTLE ROCK
Telephone (866) 473-1990
Source Dealer Ad
Location North Little Rock, AR

Comp 5    Updated Date: 06/03/2016
2003 Honda VTX1800C3
VIN UNKNOWN
Telephone (501) 944-1136
Source Private Seller
Location Little Rock, AR

Comparables used in the determination of the Base Value are not intended to be replacement units but are reflective of the market value, and may no longer be available for sale.

Price is the amount that the dealership will accept to sell the unit, though a lower price may be obtainable through negotiation.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Jeffrey Dupriest
Claim: 000431338946D01

# 📝 VALUATION NOTES

10/10/2016 13:11 - Loss Vehicle Average Mileage: 25,105

10/10/2016 13:11 - Standard equipment: PE

The following information was provided after the valuation was completed

10/11/2016 13:13 - Sales Tax data modified after Valuation

10/11/2016 13:13 - Pre/Post Tax data modified after Valuation

10/11/2016 13:13 - PVADJ CHANGE REQUESTED BY: MOBARAK, GEOFFREY

This Market Valuation Report has been prepared exclusively for use by ALLSTATE, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of valuations, and there are other valuation sources available.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Jeffrey Dupriest
Claim: 000431338946D01

# SUPPLEMENTAL INFORMATION

 **LOSS UNIT HISTORY SUMMARY**

Experian AutoCheck          No Title Problem Found

 **LOSS UNIT HISTORY INFORMATION**

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC≋ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Jeffrey Dupriest
Claim: 000431338946D01

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✔ | No Abandoned Record Found |
| Damaged | ✔ | No Damaged Record Found |
| Fire Damage | ✔ | No Fire Damage Record Found |
| Grey Market | ✔ | No Grey Market Record Found |
| Hail Damage | ✔ | No Hail Damage Record Found |
| Insurance Loss | ✔ | No Insurance Loss Record Found |
| Junk | ✔ | No Junk Record Found |
| Rebuilt | ✔ | No Rebuilt Record Found |
| Salvage | ✔ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✔ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ | No Frame Damage Record Found |
| Major Damage Incident | ✔ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ | No Odometer Problem Record Found |
| Recycled | ✔ | No Recycled Record Found |
| Branded Title Auction | ✔ | No Branded Title Auction Record Found |
| Water Damage | ✔ | No Water Damage Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ✔ | No Accident Record Found |
| Corrected Title | ✔ | No Corrected Title Record Found |
| Driver Education | ✔ | No Driver Education Record Found |
| Duplicate Title | ✔ | No Duplicate Title Record Found |
| Emissions Safety Inspection | ✔ | No Emissions Safety Inspection Record Found |
| Fire Damage Incident | ✔ | No Fire Damage Incident Record Found |
| Lease | ✔ | No Lease Record Found |
| Lien | ✔ | No Lien Record Found |
| Livery Use | ✔ | No Livery Use Record Found |
| Government Use | ✔ | No Government Use Record Found |
| Police Use | ✔ | No Police Use Record Found |
| Fleet | ✔ | No Fleet Record Found |
| Rental | ✔ | No Rental Record Found |
| Fleet and/or Lease | ✔ | No Fleet and/or Lease Record Found |
| Fleet and/or Rental | ✔ | No Fleet and/or Rental Record Found |
| Repossessed | ✔ | No Repossessed Record Found |
| Taxi use | ✔ | No Taxi use Record Found |
| Theft | ✔ | No Theft Record Found |

CCC provides ALLSTATE information reported by Experian® regarding the 2003 Honda VTX1800C3 1795 ( 1HFSC460X3A110962 ). This data is provided for informational purposes. Unless otherwise noted in this Market Valuation Report, CCC does not adjust the value of the loss unit based upon this information.

**LEGEND**
✔ No Event Found
⊖ Event Found
▣ Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT. AutoCheck's result for this loss unit show no significant title events. When found, events often indicate automotive damage or warnings associated with the unit.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT. AutoCheck's result for this loss unit show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
THIS VEHICLE CHECKS OUT. AutoCheck's result for this loss unit show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT. AutoCheck's result for this loss unit show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC**≋**ONE. MARKET VALUATION REPORT | Owner: Jeffrey Dupriest
Claim: 000431338946D01

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 10/11/2016**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | EVENT LOCATION | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 11/02/2005 | CABOT, AR | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 03/17/2006 | NORTH LITTLE ROCK, AR | 694 | Motor Vehicle Dept. | TITLE |
| 04/02/2007 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/31/2008 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/31/2009 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/30/2010 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/31/2011 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/29/2012 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/28/2013 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/22/2014 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/30/2015 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/29/2016 | NORTH LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY DR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC⪼ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
CO0D12 : 15 Pages

 **MARKET VALUATION REPORT**

Prepared for *ALLSTATE INSURANCE COMPANY*

 # REPORT SUMMARY

## 🗐 CLAIM INFORMATION

| | |
|---|---|
| Owner | Gilmore, Rachel |
| | 819 E Martin St Apt 1 |
| | Jacksonville, AR 72076-3489 |
| Loss Vehicle | 2005 Toyota Corolla S Automatic |
| Loss Incident Date | 11/16/2016 |
| Claim Reported | 11/21/2016 |

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by ALLSTATE INSURANCE COMPANY.

Loss vehicle has 5% greater than average mileage of 138,400.

## 🏛 INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 82892073 -1 |
| Claim Reference | 000436361489D01 |
| Adjuster | Ward, Cade |
| Odometer | 144,987 |
| Last Updated | 11/21/2016 08:39 AM |

## 🏷 VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 5,238.00** |
| **Adjusted Vehicle Value** | **$ 5,238.00** |
| Vehicular Tax (7.9318%) | + $ 415.47 |
| Tax reflects applicable state, county and municipal taxes. | |
| DMV Fee | + $ 13.75 |
| **Value before Deductible** | **$ 5,667.22** |
| Deductible | - $ 500.00 |
| **Total** | **$ 5,167.22** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

### BASE VEHICLE VALUE

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

### ADJUSTED VEHICLE VALUE

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

| | |
|---|---|
| Valuation Methodology | 2 |
| Vehicle Information | 3 |
| Vehicle Condition | 6 |
| Comparable Vehicles | 7 |
| Valuation Notes | 10 |
| Supplemental Information | 11 |



**EXHIBIT**
tabbies
**2**

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC⬛ONE** MARKET VALUATION REPORT | Owner: Gilmore, Rachel
Claim: 000436361489D01

# VALUATION METHODOLOGY

### How was the valuation determined?



#### CLAIM INSPECTION
ALLSTATE INSURANCE COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.

#### DATABASE REVIEW
CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

#### SEARCH FOR COMPARABLES
When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



#### CALCULATE BASE VEHICLE VALUE
Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:
- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

## CCCONE  MARKET VALUATION REPORT

# 🚙 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | JACKSONVILLE, AR 72076-3489 |
| VIN | 1NXBR32E05Z412035 |
| Year | 2005 |
| Make | Toyota |
| Model | Corolla |
| Trim | S |
| Body Style | Automatic |
| Body Type | Sedan |
| Engine - | |
|    Cylinders | 4 |
|    Displacement | 1.8L |
|    Fuel Type | Gasoline |
|    Carburation | SEFI |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 2550 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| Odometer | 144,987 | - 194 |
|---|---|---|
| **Options** | | |
| Cruise Control | Reported | + 47 |
| Aluminum/Alloy Wheels | Reported | + 94 |
| Alarm | Reported | + 70 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |
| Insurance Services Organization/ National Insurance Crime Bureau | 1 Record Found |
| National Highway Traffic Safety Administration | 2 Recalls |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Gilmore, Rachel
Claim: 000436361489D01

# 🚐 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 144,987 | |
| Transmission | Automatic Transmission | ✔ |
| | Overdrive | ✔ |
| Power | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Power Windows | ▣ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| | Power Trunk/Gate Release | ✔ |
| Decor/Convenience | Air Conditioning | ✔ |
| | Climate Control | ▣ |
| | Tilt Wheel | ✔ |
| | Cruise Control | ▣ |
| | Rear Defogger | ✔ |
| | Intermittent Wipers | ✔ |
| | Console/Storage | ✔ |
| Seating | Cloth Seats | ✔ |
| | Bucket Seats | ✔ |
| | Reclining/Lounge Seats | ▣ |
| Radio | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |
| | CD Player | ✔ |
| Wheels | Aluminum/Alloy Wheels | ▣ |
| Safety/Brakes | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Alarm | ▣ |
| Exterior/Paint/Glass | Dual Mirrors | ✔ |
| | Body Side Moldings | ✔ |
| | Tinted Glass | ✔ |
| | Fog Lamps | ✔ |

To the left is the equipment of the loss vehicle that ALLSTATE INSURANCE COMPANY provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

▣ **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⊿ONE  MARKET VALUATION REPORT

Owner: Gilmore, Rachel
Claim: 000436361489D01

# 🚌 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

|              |                     |     |
|--------------|---------------------|-----|
|              | Rear Spoiler        | ✔   |
|              | Clearcoat Paint     | ⊟   |
| Other - Cars | California Emissions | ✔   |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Gilmore, Rachel
Claim: 000436361489D01

# 🚐 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | PRIVATE OWNER | lightly soiled, moderate wear in drivers area with a few burn holes | $ 0 |
| Carpets | PRIVATE OWNER | lightly soiled with a few burn marks, lightly worn in drivers area | $ 0 |
| Dashboard | PRIVATE OWNER | console lid broken, storage lid broken, few light scratches and gouges | $ 0 |
| Headliner | PRIVATE OWNER | lightly scuffed with 2 burn marks | $ 0 |
| **EXTERIOR** | | | |
| Sheet Metal | PRIVATE OWNER | few dents and dings, no rust, all panels properly aligned | $ 0 |
| Trim | PRIVATE OWNER | headlamps hazy, window trim cracked | $ 0 |
| Paint | PRIVATE OWNER | few rock chips and light scratches | $ 0 |
| Glass | PRIVATE OWNER | few small chips and scratches | $ 0 |
| **MECHANICAL** | | | |
| Engine | PRIVATE OWNER | belts and hoses firm with minimal wear, oil level normal on dipstick | $ 0 |
| Transmission | PRIVATE OWNER | fluid slightly discolored | $ 0 |
| **TIRES** | | | |
| Front Tires | PRIVATE OWNER | lt front 6/32, rt front 5/32, 5.5/32 average, based on new tread depth of 11/32, 5.5/11=50% | $ 0 |
| Rear Tires | PRIVATE OWNER | rt rear 5/32, lt rear 6/32, 5.5/32 average, based on new tread depth of 11/32, 5.5/11=50% | $ 0 |

**Total Condition Adjustments** **$ 0**

ALLSTATE INSURANCE COMPANY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Private Owner condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE  MARKET VALUATION REPORT

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 144,987 | 150,002 | 140,236 | 162,804 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✘ |
| 5 Speed Transmission | ✘ | ✘ | ✘ | ✔ |
| Overdrive | ✔ | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✘ | ✔ | ✘ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✘ | ✘ | ✘ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✘ | ✘ | ✘ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✘ | ✘ | ✔ | ✘ |
| Cloth Seats | ✔ | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ | ✔ |
| Wheel Covers | ✘ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✘ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✘ | ✘ | ✘ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✔ | ✔ | ✔ |
| Tinted Glass | ✔ | ✔ | ✔ | ✔ |
| Fog Lamps | ✔ | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |
| California Emissions | ✔ | ✔ | ✔ | ✔ |
| List Price | | $ 4,981 | $ 6,691 | $ 6,488 |

Comp 1      Updated Date: 10/24/2016
2005 Toyota Corolla S Automatic 4
1.8l Gasoline Sefi
VIN 1NXBR32E15Z430267
Dealership North Point Toyota
Telephone (501) 753-0400
Source Autotrader
Stock # 5Z430267
Distance from Jacksonville, AR
8 Miles - North Little Rock, AR

Comp 2      Updated Date: 08/30/2016
2005 Toyota Corolla S Automatic 4
1.8l Gasoline Sefi
VIN 1NXBR32E15Z548366
Dealership North Point Toyota
Telephone (501) 753-0400
Source Autotrader
Stock # 5Z548366
Distance from Jacksonville, AR
8 Miles - North Little Rock, AR

Comp 3      Updated Date: 10/03/2016
2005 Toyota Corolla S Manual 4 1.8l
Gasoline Sefi
VIN 1NXBR32E35Z567498
Dealership Acura Of Memphis
Telephone (888) 993-7640
Source Autotrader
Stock # 6U2376A
Distance from Jacksonville, AR
129 Miles - Memphis, TN

Comparable vehicles used in the
determination of the Base Vehicle Value
are not intended to be replacement
vehicles but are reflective of the market
value, and may no longer be available
for sale.

List Price is the sticker price of an
inspected dealer vehicle and the
advertised price for the advertised
vehicle.

Distance is based upon a straight line
between loss and comparable vehicle
locations.

¹The Condition Adjustment sets that
comparable vehicle to Private Owner
condition, which the loss vehicle is also

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC◼ONE  MARKET VALUATION REPORT | Owner: Gilmore, Rachel
Claim: 000436361489D01

 COMPARABLE VEHICLES

compared to in the Vehicle Condition section.

**Adjustments:**

| | | | |
|---|---|---|---|
| Make/Model/Trim | | | + $ 200 |
| Options | + $ 258 | + $ 141 | + $ 258 |
| Mileage | + $ 124 | + $ 136 | + $ 370 |
| Condition[1] | - $ 990 | - $ 990 | - $ 990 |
| **Adjusted Comparable Value** | **$ 4,373** | **$ 5,706** | **$ 6,326** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⊠ONE  MARKET VALUATION REPORT

 COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 4** | | | |
| Source: Autotrader | **2006 Toyota Corolla S** | $ 5,981 | $ 5,393 |
| Steve Landers Toyota Scio | **Automatic 4 1.8l Gasoline** | (List) | |
| Little Rock, AR | **Sefi** | | |
| (855) 832-0847 | Odometer: 166,597 | | |
| 16 Miles From Jacksonville, AR | VIN: 1NXBR32E36Z691031 | | |
| | Stock #: 6Z691031 | | |
| | Updated Date: 11/01/2016 | | |
| **Comp 5** | | | |
| Source: Autotrader | **2006 Toyota Corolla S** | $ 8,500 | $ 4,923 |
| Wolfchase Toyota | **Automatic 4 1.8l Gasoline** | (List) | |
| Cordova, TN | **Sefi** | | |
| (901) 377-8000 | Odometer: 69,048 | | |
| 134 Miles From Jacksonville, AR | VIN: 1NXBR32E56Z628464 | | |
| | Stock #: 6Z628464 | | |
| | Updated Date: 09/29/2016 | | |

Additional Comparable Vehicles are in summary format, but are adjusted the same as those on the previous page.

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Distance is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⬛ONE  MARKET VALUATION REPORT

Owner: Gilmore, Rachel
Claim: 000436361489D01

# 📝 VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by ALLSTATE INSURANCE COMPANY, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Arkansas Insurance Department Rule 43.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC☷ONE  MARKET VALUATION REPORT

Owner: Gilmore, Rachel
Claim: 000436361489D01

# SUPPLEMENTAL INFORMATION

## 🚗 VEHICLE HISTORY INFORMATION

### VINguard®

VINguard® Message: VINguard has decoded this VIN without any errors

### ISO Vehicle History:

| | |
|---|---|
| **Number of times reported to ISO:** | 1 |
| **ISO's file number:** | H0249305839 |
| Loss date: | 11/16/2016 |
| Phone: | 6153994825 |
| Claim ref: | 0436361489 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 CCC⊗ONE. MARKET VALUATION REPORT | Owner: Gilmore, Rachel
Claim: 000436361489D01

# SUPPLEMENTAL INFORMATION

## EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT

CCC provides ALLSTATE INSURANCE COMPANY information reported by Experian regarding the 2005 Toyota Corolla (1NXBR32E05Z412035). This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✔ No Event Found
◯ Event Found
🄐 Information Needed

### TITLE CHECK | RESULTS FOUND

| | | |
|---|---|---|
| Abandoned | ✔ | No Abandoned Record Found |
| Damaged | ✔ | No Damaged Record Found |
| Fire Damage | ✔ | No Fire Damage Record Found |
| Grey Market | ✔ | No Grey Market Record Found |
| Hail Damage | ✔ | No Hail Damage Record Found |
| Insurance Loss | ✔ | No Insurance Loss Record Found |
| Junk | ✔ | No Junk Record Found |
| Rebuilt | ✔ | No Rebuilt Record Found |
| Salvage | ✔ | No Salvage Record Found |

**TITLE CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

### EVENT CHECK | RESULTS FOUND

| | | |
|---|---|---|
| NHTSA Crash Test Vehicle | ✔ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ | No Frame Damage Record Found |
| Major Damage Incident | ✔ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ | No Odometer Problem Record Found |
| Recycled | ✔ | No Recycled Record Found |
| Water Damage | ✔ | No Water Damage Record Found |
| Salvage Auction | ✔ | No Salvage Auction Record Found |

**EVENT CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

### VEHICLE INFORMATION | RESULTS FOUND

| | | |
|---|---|---|
| Accident | ✔ | No Accident Record Found |
| Corrected Title | 🄐 | Corrected Title Record Found |
| Driver Education | ✔ | No Driver Education Record Found |
| Fire Damage Incident | ✔ | No Fire Damage Incident Record Found |
| Lease | 🄐 | Lease Record Found |
| Lien | ✔ | No Lien Record Found |
| Livery Use | ✔ | No Livery Use Record Found |
| Government Use | ✔ | No Government Use Record Found |
| Police Use | ✔ | No Police Use Record Found |
| Fleet | ✔ | No Fleet Record Found |
| Rental | ✔ | No Rental Record Found |
| Fleet and/or Rental | ✔ | No Fleet and/or Rental Record Found |
| Repossessed | ✔ | No Repossessed Record Found |
| Taxi use | ✔ | No Taxi use Record Found |
| Theft | ✔ | No Theft Record Found |
| Fleet and/or Lease | 🄐 | Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ | No Duplicate Title Record Found |

**VEHICLE INFORMATION**
INFORMATION FOUND
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

## CCC☰ONE  MARKET VALUATION REPORT

Owner: Gilmore, Rachel
Claim: 000436361489D01

# SUPPLEMENTAL INFORMATION

## 📖  FULL HISTORY REPORT RUN DATE: 11/21/2016

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 09/13/2004 | AR | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 04/21/2005 | MONTICELLO, AR | 11 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 05/23/2005 | MONTICELLO, AR | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 05/23/2005 | MONTICELLO, AR | | Motor Vehicle Dept. | CORRECTED TITLE |
| 09/19/2005 | MONTICELLO, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/29/2006 | MONTICELLO, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/30/2007 | TX | 60422 | Auto Auction | REPORTED AT AUTO AUCTION |
| 02/22/2007 | TX | 60422 | Auto Auction | AUCTION ANNOUNCED AS FLEET/LEASE |
| 06/05/2007 | DOVER, AR | 60484 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 06/05/2007 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/26/2008 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/15/2009 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/23/2010 | DOVER, AR | 131252 | Motor Vehicle Dept. | TITLE |
| 07/23/2010 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/22/2011 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/17/2012 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/05/2013 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/14/2014 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/09/2015 | DOVER, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/23/2015 | JACKSONVILLE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/12/2016 | JACKSONVILLE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

AUTOCHECK TERMS AND CONDITIONS:

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC⬛ONE  MARKET VALUATION REPORT**

Owner: Gilmore, Rachel
Claim: 000436361489D01

# SUPPLEMENTAL INFORMATION

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC🔊ONE. MARKET VALUATION REPORT

Owner: Gilmore, Rachel
Claim: 000436361489D01

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 2 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID : 14V655000**

**Mfg's Report Date :** OCT 20, 2014

**Component :** AIR BAGS

**Potential Number Of Units Affected :** 247,000

**Summary :** Toyota Motor Engineering and Manufacturing (Toyota) is recalling certain model year 2002-2005 Lexus SC and Toyota Sequoia and 2003-2005 Toyota Tundra, Corolla, Corolla Matrix and Pontiac Vibe vehicles that were originally sold, or are currently registered, in high absolute humidity areas of southern Florida, along the Gulf Coast, Puerto Rico, Hawaii, the U.S. Virgin Islands, Guam, Saipan and American Samoa. The inflators in the front passenger air bags are susceptible to rupture in the event of a crash necessitating the deployment of the front passenger air bag.

**Consequence :** In the event of a crash necessitating deployment of the front passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants.

**Remedy :** Toyota will notify owners of affected Toyota and Lexus vehicles and General Motors will notify owners of affected Pontiac Vibe vehicles. Toyota, Lexus, and GM dealers will replace the passenger side air bag inflator, free of charge. If a replacement inflator is not available, as an interim measure, the dealer will disable the front passenger air bag and advise the customer not to use the front passenger seat until a replacement inflator is installed. Toyota will begin its owner notification and remedy of the affected Toyota and Lexus vehicles on or around October 25, 2014. Details on GM's notification and remedy schedule are pending. Owners may contact Toyota customer service at 1-800-331-4331. Pontiac Vibe owners may contact GM at 1-800-521-7300.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

---

**NHTSA Campaign ID : 15V286000**

**Mfg's Report Date :** MAY 13, 2015

**Potential Number Of Units Affected :** 300,000

**Summary :** Toyota Motor Engineering & Manufacturing (Toyota) is recalling certain model year 2005-2007 Lexus SC, Toyota Corolla, Corolla Matrix, Sequoia, and Pontiac Vibe, and 2005-2006 Toyota Tundra vehicles that were originally sold, or ever registered, in Florida, along the Gulf Coast, Puerto Rico, Hawaii, the U.S. Virgin Islands, Guam, Saipan and American Samoa. The inflators in the front passenger air bags are susceptible to rupture in the event of a crash necessitating the deployment of the front passenger air bag.

**Remedy :** Toyota will notify owners, and dealers will replace the passenger side front air bag, free of charge. Owners may contact Toyota customer service at 1-800-331-4331. Pontiac Vibe owners may contact GM at 1-800-762-2737. Note: This recall is an expansion of recall 14V-655.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-04  09:16:51
60CV-19-1235
C06D12 : 1 Page

Change Manufacturer | Change Year & Model | Change ZIP | Change Options | Values

# 2003 Honda

## VTX1800C3 Prices

Values      Specifications      Special Notes

## Values

|  | Suggested List Price | Low Retail | Average Retail |
|---|---|---|---|
| Base Price | $12,499 | $2,985 | $3,925 |
| **Options** (<u>Change</u>) | | | |
| **Total Price** | **$12,499** | **$2,985** | **$3,925** |

🛡 Make sure you're protected!
**Insure your Motorcycle for as low as just $75/year.***

**Research another motorcycle**
[ Go ]
**Truck deals, pricing and values**
[ Go ]



EXHIBIT
3

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-04  09:16:51
60CV-19-1235
Pages



# 2003 Honda VTX1800R VTX ...

Used Cruiser Motorcycle In Jonesboro, AR 72401



📞 1-833-233   ✉ Email      ♡ Save Listing

## 📄 DETAILS FROM SELLER

**Condition:** Used

**Year:** 2003

**Make:** Honda

**Model:** VTX1800R VTX 1800 R

**Category:** Cruiser

**Type:** Motorcycle

**Location:** Jonesboro, AR

**Mileage:** 11,895

**Price:** $4,499

**View On The Dealer's Website** ☑

## DESCRIPTION & COMMENTS

2003 Honda VTX1800R VTX 1800 R, PERFECT VTX1800R WITH LOW MILES AND LOTS OF EXTRAS.
NEW TIRES TOO. ALL SERVICED AND READY TO GO. CALL CARI OR BRENT 870-919-5721
JONESBORO CYCLE AND ATV 2800 FAIR PARK BLVD JONESBORO, AR 72401 870-935-2887 870-935-
2889 FAX PRICE DOES NOT INCLUDE FEES WWW.JONESBOROCYCLE.COM WWW.KAWASAKI.COM
WWW.TEXTRONOFFROAD.COM WWW.KTMUSA.COM WWW.KYMCOUSA.COM
WWW.HAMMERHEADOFFROAD.COM

EXHIBIT

4

PERFECT VTX1800R WITH LOW MILES AND LOTS OF EXTRAS. NEW TIRES TOO. ALL SERVICED AND
READY TO GO.

CALL CARI OR BRENT 870-919-5721
JONESBORO CYCLE AND ATV
2800 FAIR PARK BLVD
JONESBORO, AR 72401
870-935-2887
870-935-2889 FAX
PRICE DOES NOT INCLUDE FEES
WWW.JONESBOROCYCLE.COM
WWW.KAWASAKI.COM
WWW.TEXTRONOFFROAD.COM
WWW.KTMUSA.COM
WWW.KYMCOUSA.COM
WWW.HAMMERHEADOFFROAD.COM

## MESSAGE FROM JONESBORO CYCLE & ATV

The best quality bikes for the best prices.

## DISCLAIMERS

## Cycle Trader Disclaimer:

The information provided for each listing is supplied by the seller and/or other third parties.
CycleTrader.com is not responsible for the accuracy of the information. Please refer to the Cycle
Trader Terms of Use for further information.

JONESBORO
**CYCLE**/ATV
Jonesboro Cycle & ATV
1-833-233-7485
2800 Fair Park Blvd
Jonesboro, AR 72401

SUBSCRIBE TO OUR NEWSLETTER:

Enter Your Email      **SUBMIT**

© 2019 | CycleTrader.com
All Rights Reserved.

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-04  09:16:51
60CV-19-1235
C06D12 : 6 Pages



cars.com  Cars for Sale   Sell Your Car   Service & Repair   Research   Videos & Reviews

# Used Toyota Corolla for Sale

Sort by:   Relevance: Best Match

Filter Results          New Search

Get the latest          Email      Sign Up
listings by email

**7 matches**                Save Search

Clear All    × Toyota

× Corolla    × 2005    × S

× Used

FEATURED

STEVE LANDERS TOYOTA    Steve Lanc    GOOD DE    FAIR PRIC    GOOD DEAL
★ ★ ★ ½
(888) 707-3
Dealer Website

Currently in stock:          2015 Toy...   2013 Toy...   2016 Toy...
476 New  |  102 CPO  |  486    $16,259    90,2 $18,297    53,95 $18,280    46,844 n

## Location

Search within

500 miles          72201

Show me cars available for home
delivery

Include vehicles outside of my search
radius that can be delivered to my home.

## New/Used

○ All    ○ New    ● Used

○ Certified Pre-Owned

## Year

EXHIBIT
5

2005 to 2005

**Make**

Toyota

☐ Acura

☐ BMW

☐ Chevrolet

☐ Ford

☐ Honda

Show all Makes in A-Z

**Trim**

S

☐ Base or Unknown

☐ CE

☐ LE

**Price**

Min Price   Max Price

**Mileage**

◯ 150,000 or less (3)

USED   ♡ Save   ☐ Compare

**$3,699**   167,689 mi.

**2005 Toyota Corolla S**

GREAT DEAL

**Indianapolis Motor Sports**
- (317) 644-1643
★ 4.4 (14 reviews) |
480 mi. from 72201

**Ext. Color:** White
**Int. Color:** Gray
**Transmission:** Automatic
**Drivetrain:** FWD

CARFAX Report

Check Availability

---

USED   ♡ Save   ☐ Compare

**$4,975**   202,520 mi.

**2005 Toyota Corolla S**

GOOD DEAL

**Toyota of Somerset**
- (606) 575-3146
★ 4.9 (746 reviews) |
458 mi. from 72201 |
Authorized Toyota Dealer

**Ext. Color:** Gray
**Int. Color:** Black
**Transmission:** Other /
Unknown
**Drivetrain:** FWD

Free CARFAX Report

Check Availability

○ 200,000 or less (5)

○ 250,000 or less (7)

## Deal Rating

☐ **GREAT DEAL**   (1)

☐ **GOOD DEAL**   (4)

## Features

☐ Alloy Wheels (1)

☐ Premium Sound System (1)

☐ Rear Seat Entertainment (1)

---

**Body Style**   ＞

**Exterior Color**   ＞

**Interior Color**   ＞

**Drivetrain**   ＞

**Transmission**   ＞

**Cylinders**   ＞

**Photos**   ＞

**Fuel**   ＞

**Door Count**   ＞

**Dealer Ratings**   ＞

---

USED   ♡ Save   ⋮ Compare
**$4,690**   215,081 mi.
**2005 Toyota Corolla S**

**GOOD DEAL**

**Toyota South** - (888) 253-2892
★ 4.9 (377 reviews)  |
491 mi. from 72201  |
Authorized Toyota Dealer

**Ext. Color:** Gray
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** FWD

📄 Free CARFAX Report

[ Check Availability ]

---

USED   ♡ Save   ⋮ Compare
**$5,495**   151,466 mi.
**2005 Toyota Corolla S**

**GOOD DEAL**

**Elvis's Autos LLC**
- (901) 290-0403
★ 2 (2 reviews)  |
140 mi. from 72201

**Ext. Color:** Blue
**Int. Color:** Gray
**Transmission:** Automatic
**Drivetrain:** FWD

📄 CARFAX Report

[ Check Availability ]

**Listing Date**                    >

**Seller Type**                     >

**Keywords**                        >

USED   ♡ Save   ☐ Compare
**$4,950**   135,794 mi.
**2005 Toyota Corolla S**

**GOOD DEAL**

**MJ Auto Broker**
- (404) 935-6717
⭐ 5 (1 reviews) |
455 mi. from 72201

**Ext. Color: Blue**
**Int. Color: Gray**
**Transmission: Automatic**
**Drivetrain: FWD**

📄 CARFAX Report

Check Availability

USED   ♡ Save   ⋮⋮ Compare
**$3,850**   122,600 mi.
**2005 Toyota Corolla S**

**Kranthi (Private Seller)**
395 mi. from 72201

**Ext. Color: White**
**Int. Color: Brown**
**Transmission: Automatic**
**Drivetrain: 4x2/2-wheel drive**

📄 CARFAX Report

Check Availability

JUST ADDED

USED  ♡ Save    · Compare

# Not Priced

ⅰ 120,946 mi.

## 2005 Toyota Corolla S

**Speedway Ford**
- (866) 530-1538
★ 5 (176 reviews)  |
467 mi. from 72201

**Ext. Color:** Gold
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** FWD

📄 CARFAX Report

Check Availability

Prev      Next

1

20 Per Page

* Title, other fees, and incentives are not included in this calculation, which is
an estimate only. Monthly payment estimates are for illustrative purposes only
and do not represent a financing offer from the seller. Other taxes may apply.
The information on vehicles provided in this service is supplied by the seller or
other third parties; Cars.com is not responsible for the accuracy of such
information. Cars.com provides this service and materials without
representations or warranties of any kind, either expressed or implied. See our
terms of service for more details.

Our Company          Buying & Selling          Our Partners

⋯ ⋯ ⋯ ⋯ ⋯          ⋯ ⋯ ⋯ ⋯          ⋯ ⋯ ⋯

⋯ ⋯ ⋯ ⋯ ⋯          ⋯ ⋯ ⋯ ⋯          NewCars.com

Contact Cars.com        Sell Your Car         RepairPal.com

Mobile Apps             Car Book Values

Site Map                Car Dealers

Careers                 Consumer Car Place

Get the app

Terms of Service    Privacy Statement    Ad Choices                    © 2012 Cars.com all rights reserved

🔲 🔲 🔲                                    **Compare  0 / 4**


## Let's get started!

cars by clicking 'Compare' on the card listings.
    You can select up to 4 to compare.


**Ok, Got It!**

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**JEFF DuPRIEST and**                                                    **PLAINTIFFS**
**RACHEL GILMORE**

**v.**            CASE NO. _60CV-19-1235_

**ALLSTATE INSURANCE COMPANY**                    **DEFENDANT**

---

### PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ALLSTATE INSURANCE COMPANY

---

Come now Plaintiffs, and for their First Set of Interrogatories and Requests for Production of Documents to Defendant Allstate Insurance Co., states:

### INTERROGATORIES

**Interrogatory No. 1.** Identify each person who answers any of the following interrogatories, and for each person, state: (a) their name, address, and telephone number; (b) by whom employed and job title; (c) basis of the authority to answer; and (d) specific interrogatory by number and subject that person answered.

**Interrogatory No. 2.** State the name and, if known, the address and telephone number of each individual likely to have discoverable

information—along with the subjects of that information—that you may use to support your claims or defenses.

**Interrogatory No. 3.** State the number of total loss claims that you settled in Arkansas between February 28, 2014 and the present using the CCC Report.

**Interrogatory No. 4.** Describe your policies and practices for adjusting total loss automobile claims.

**Interrogatory No. 5.** State the reason that you use the CCC Report to determine the value of total loss vehicles.

**Interrogatory No. 6.** State the name, address, and telephone number of each person you expect to call as an expert witness at trial, and for each expert witness, separately state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

**Interrogatory No. 7.** Does Defendant, or any of its agents or attorneys, have statements from any witnesses, including any plaintiff or putative class member, regarding the issues that are subjects of this lawsuit? If so, state the

name, address, and telephone number of each such witness, the date of said statement, and whether said statement is written or oral.

**Interrogatory No. 8.** If you have withheld information or documents that would be responsive to any of these interrogatories or requests for production of documents, describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable us to assess the claim.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1.** A copy of your complete claim file.

**Request for Production No. 2.** A copy of all written contracts with CCC Information Services, Inc. or its affiliates or subsidiaries.

**Request for Production No. 3.** A copy of any marketing materials provided to you by CCC Information Services, Inc. or its affiliates or subsidiaries.

**Request for Production No. 4.** Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action, to indemnify or reimburse for payments made to

satisfy the judgment, or to defend, indemnify, or reimburse you for the costs spent defending this action.

**Request for Production No. 5.** Any training materials provided to adjusters regarding the use of CCC Information Services, Inc.'s products to settle total loss claims.

**Request for Production No. 6.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at a deposition of this case.

**Request for Production No. 7.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at any hearing in this case.

**Request for Production No. 8.** Any document, electronically stored information, or other tangible thing that Defendant intends to use to support any motion filed in this case.

**Request for Production No. 9.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at the trial of this case.

**Request for Production No. 10.** Any statements from Plaintiffs that Defendant or its attorneys have regarding this action or its subject matter.

**Request for Production No. 11.** Any statements that Defendant or its

attorneys have regarding the issues that are the subject of this lawsuit.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

## CERTIFICATE OF SERVICE.

I, John Holleman, certify that a copy of the preceding Interrogatories and Requests for Production was dispatched on February 28, 2018, to be served by hand delivery simultaneously with a copy of the Summons and Complaint on the following:

Allstate Insurance Co.
124 W. Capitol Ave.
Suite 1900
Little Rock, AR 72201

John Holleman

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-11 12:49:13
60CV-19-1235
C06D12 : 4 Pages

No. 60CV-19-1235 This summons is for ALLSTATE INSURANCE COMPANY (name of Defendant)

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the individual at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☒ On 3-5-19 [date] I delivered the summons and complaint to The Corporation Company *see other* [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of Allstate Insurance Company [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains and office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____

[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☒ Other [specify]: Plaintiffs' First Set of Interrogatories and Requests for Production of Documents to Defendant Allstate Insurance Company

☐ I was unable to execute service because: _____
_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: 3-6-19          By: _____
[Signature of server]

_____
Jeff Barnett
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **JEFFREY DUPRIEST AND** | ) | |
| **RACHEL GILMORE** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No:** |
| **v.** | ) | |
| | ) | |
| **ALLSTATE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>DECLARATION OF JOEL DeWALL</u>

Pursuant to 28 U.S.C. § 1746, I, Joel DeWall, hereby depose and state as follows:

1.     I am over eighteen years of age and make this statement based on personal knowledge.

2.     I currently am employed by Allstate Insurance Company as Operations Director of Auto Line Management.  My business address is 2775 Sanders Road Northbrook, IL 60062.  I have been employed by Allstate Insurance Company since September 1998.

3.     Allstate Property and Casualty Insurance Company is an Illinois insurance corporation with its principal place of business in Northbrook, Illinois.

4.     As an Operations Director for Allstate Insurance Company, I am familiar with and have knowledge of the business records maintained by Allstate Property and Casualty Insurance Company with regard to the automobile insurance policies issued in Arkansas pertaining to total loss comprehensive and collision claims ("total loss claims") under those policies and the total loss valuations performed for such total loss claims.

5.     Based on my review of the business record data regarding such total loss valuations, for the five year period beginning on February 28, 2014 and ending on March 4, 2019, I estimate



that Allstate Property and Casualty Insurance Company has settled approximately 9,795 total loss claims under Allstate Property and Casualty Insurance Company automobile insurance policies issued in the state of Arkansas with an aggregate valuation of approximately $81,295,518.24.

6.    Allstate's records reveal that Jeffrey DuPriest, at all relevant times, was not insured by Allstate Insurance Company. At the time of his total loss accident, Jeffrey DuPriest was insured by Allstate Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company adjusted his total loss claim.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: April 4, 2019

By:

Joel DeWall

2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **JEFFREY DUPRIEST AND** | ) |
| **RACHEL GILMORE** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **Case No:** |
| **v.** | ) |
| | ) |
| **ALLSTATE INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## DECLARATION OF KEVIN BOLKEMA

Pursuant to 28 U.S.C. § 1746, I, Kevin Bolkema, hereby depose and state as follows:

1.      I am over eighteen years of age and make this statement based on personal knowledge.

2.      I am currently employed by Allstate Insurance Company as a Senior Manager for DOI, Regulatory and Legal Support in Auto Claims Line Management Operations.  My business address is 2775 Sanders Road, Northbrook, IL 60062.  I have been employed by Allstate Insurance Company since September 11, 1978.

3.      Allstate Insurance Company is an Illinois insurance corporation with its principal place of business in Northbrook, Illinois.

4.      As a Senior Manager for Allstate Insurance Company, I am familiar with and have knowledge of the business records maintained by Allstate Insurance Company with regard to the automobile insurance policies issued in Arkansas pertaining to total loss comprehensive and collision claims ("total loss claims") under those policies and the total loss valuations performed for such total loss claims.



EXHIBIT
3
PENGAD 800-631-6989

5.     Based on my review of the business record data regarding such total loss valuations,

for the five-year period beginning on February 28, 2014 and ending on March 4, 2019, I estimate

that Allstate Insurance Company has settled approximately 2,443 total loss claims under Allstate

Insurance Company automobile insurance policies issued in the state of Arkansas with an

aggregate valuation of approximately $19,207,277,54.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: March 27, 2019

By:

KEVIN BOLKEMA